**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────

JOHNATHAN W.,

                                        Plaintiff,

            v.
                                                        No. 6:19-CV-1242
ANDREW SAUL,                                            (CFH)
Commissioner of Social Security,

                                        Defendant.

─────────────────────────────

**APPEARANCES:**                    **OF COUNSEL:**

Law Offices of Kenneth Hiller, PLLC    KENNETH R. HILLER, ESQ.
6000 North Bailey Avenue, Suite 1A     JUSTIN M. GOLDSTEIN, ESQ.
Amherst, New York 14226
Attorneys for plaintiff


Social Security Administration         MOLLY CARTER, ESQ.
Office of the General Counsel,         Special Assistant U.S. Attorney
15 Sudbury Street, Suite 625
Boston, Massachusetts 02203
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

Plaintiff Johnathan W. brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying her application for disability insurance benefits.  See Dkt. No. 1 ("Compl.").

Plaintiff moves for reversal and remand for further administrative proceedings, and the

Commissioner cross moves for a judgment on the pleadings.  See Dkt. Nos. 10, 11.  For

─────────────────────

[1]  Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 5.

the following reasons, plaintiff's motion is granted, the Commissioner's motion is denied, and the matter is reversed and remanded for further administrative proceedings.

## I. Background

On February 14, 2018, plaintiff protectively filed a Title II application for disability insurance benefits, alleging a disability onset date of April 15, 2017.  See T. at 73, 126. The Social Security Administration denied both claims on March 23, 2018.  See id. at 74.  Plaintiff requested a hearing, see id. at 83, and a hearing was held on November 14, 2018, in Syracuse, New York, before Administrative Law Judge ("ALJ") Gretchen Mary Greisler.  See id. at 35-61.  On May 24, 2019, the ALJ issued an unfavorable decision.  See id. at 6.  On August 9, 2019, the Appeals Counsel denied plaintiff's request for review of the ALJ's decision.  See id. at 1. Plaintiff commenced this action on October 8, 2019.  See Compl.

## II. Applicable Law

### A. Scope of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in

2

the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would *have to conclude otherwise*."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable

impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

4

> Finally, if the claimant is unable to perform his [or her] past
> work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

## III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since April 15, 2017, the alleged onset date.  See T. at 11.  At step two, the ALJ found that plaintiff had the following severe impairments: "depressive disorder, posttraumatic stress disorder, and methamphetamine and alcohol use disorders."  Id. at 12.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels.
> Mentally, the claimant can perform work that does not
> require more than simple, short interactions with supervisors,
> coworkers or the public.  He can work in proximity with
> others, but his assigned work tasks should not require

5

> working in conjunction with others and should predominantly involve working with objects rather than people.  The claimant can perform low-stress work, which is defined as involving occasional decision-making and occasional changes in the work setting.  The claimant also should not work in an environment that is stringently production or quota-based, and thus may not perform fast-paced assembly line type of work, but can meet production requirements that allow him to sustain a flexible and goal-oriented pace.

Id. at 14.  At step four, the ALJ determined that plaintiff could not perform any past relevant work.  See id. at 16.  At step five, considering plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  See id. at 17.  Thus, the ALJ determined that plaintiff had not been under a disability, as defined in the Social Security Act, since the alleged disability onset date.  See id. at 18.


## IV. Discussion

Plaintiff primarily argues that the ALJ committed reversable error by failing to evaluate and weigh a June 16, 2017 disability benefits questionnaire and evaluation completed by Dr. Thompson, Psy.D., a psychologist for the Veterans Administration ("VA"), that was made in connection with a compensation and pension examination to determine plaintiff's entitlement to veterans' benefits.  See Dkt. No. 10 at 12-14, 15-18. Plaintiff avers that the ALJ's failure to explicitly consider Dr. Thompson's report constitutes reversable error because it "undermines the supportability of the ALJ's finding at Step 3[,]" id. at 14; and prevents the Court from finding that the ALJ's RFC finding [is] supported" by substantial evidence.  Id. at 15.

The Commissioner argues that the ALJ properly applied the special technique at step three and that her determination in this regard is supported by substantial evidence.  See Dkt. No. 11 at 5-8.  Further, the Commissioner argues that "[t]he fact that the ALJ did not discuss Dr. Thompson's report . . . at step three is not meaningful[,]" because she discussed that evidence later in her decision.  Id.  In addition, the Commissioner argues that the ALJ properly evaluated all of the opinion evidence in reaching her RFC determination.  See id. at 9.  Of particular relevance, the Commissioner contends that "Dr. Thompson did not give medical opinion as defined in the applicable regulations," because he "did not describe what [p]laintiff could still do or articulate specific limitations in any of the mental work activities listed in 20 C.F.R. § 404.1513(a)(2)(ii)," and that "the ALJ was not required to weigh the VA disability rating." Id. at 11, 12.

As emphasized by the Commissioner, see Dkt. No. 11 at 9, an ALJ's review of medical evidence of record for claims filed on or after March 27, 2017—as plaintiff's claim here—is governed by 20 C.F.R. § 404.1520c, entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."  The new regulations provide that the Social Security Administration

> will not defer or give any specific evidentiary weight,
> including controlling weight, to any medical opinion(s) or
> prior administrative medical finding(s), including those from
> your medical sources.  When a medical source provides one
> or more medical opinions or prior administrative medical
> findings, we will consider those medical opinions or prior
> administrative medical findings from that medical source
> together using the factors listed in paragraphs (c)(1) through
> (c)(5) of this section, as appropriate.  The most important
> factors we consider when we evaluate the persuasiveness of

> medical opinions and prior administrative medical findings
> are supportability (paragraph (c)(1) of this section) and
> consistency (paragraph (c)(2) of this section).  We will
> articulate how we considered the medical opinions and prior
> administrative medical findings in your claim according to
> paragraph (b) of this section.

20 C.F.R. § 404.1520c(a).  The factors provided in paragraph (c) are: (1) supportability;

(2) consistency; (3) relationship with claimant; (4) specialization; and (5) other factors.

See id. at § 404.1520c(c)(1)-(5).  Paragraph (b) of Section 404.1520c provides the

Social Security Administration's "articulation requirements" with respect to how it

"articulates [its] consideration of medical opinions and prior administrative medical

findings."  Id. at § 404.1520c(b).  Of particular relevance, the updated regulations

explain that

> The factors of supportability (paragraph (c)(1) of this section)
> and consistency (paragraph (c)(2) of this section) are the
> most important factors we consider when we determine how
> persuasive we find a medical source's medical opinions or
> prior administrative medical findings to be. Therefore, we will
> explain how we considered the supportability and
> consistency factors for a medical source's medical opinions
> or prior administrative medical findings in your determination
> or decision.  We may, but are not required to, explain how
> we considered the factors in paragraphs (c)(3) through (c)(5)
> of this section, as appropriate, when we articulate how we
> consider medical opinions and prior administrative medical
> findings in your case record.

Id. at § 404.1520c(b)(2).  A "medical opinion" is defined, in relevant part, as

> a statement from a medical source about what you can still
> do despite your impairment(s) and whether you have one or
> more impairment-related limitations or restrictions in the
> following abilities: . . .
>
> (ii) Your ability to perform the mental demands of work
> activities, such as understanding; remembering; maintaining
> concentration, persistence, or pace; carrying out instructions;

> or responding appropriately to supervision, co-workers, or
> work pressures in a work setting.

20 C.F.R. § 404.1513(a)(2)(ii).  However, "some opinions of medical providers . . . are not 'medical opinions' as that term of art is used in the Social Security context."  Charles F. v. Comm'r of Soc. Sec., No. 19-CV-1664 (LJV), 2021 WL 963585, at *2 (W.D.N.Y. Mar. 15, 2021).  For instance, "[d]isability and other benefits decisions made by other governmental agencies—'such as the Department of Veterans Affairs' ("VA")—are made 'for their own programs using their own rules [and therefore are] not binding on [the Commissioner].'  Id. (quoting 20 C.F.R. § 404.1504).  Indeed, the regulations provide that other agencies' disability determinations are "inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled or blind under the Act, [so the ALJ] will not provide any analysis about how [he or she] considered such evidence in [his or her] determination or decision."  20 C.F.R. §§ 404.1520b(c), 416.920b(c). "Nonetheless, in such a circumstance, the ALJ still must 'consider all of the supporting evidence underlying' other agencies' disability determinations.  Charles F., 2021 WL 963585, at *2 (quoting 20 C.F.R. § 404.1504).

Two courts within this circuit have recently considered whether certain portions of a VA compensation and pension questionnaire may be considered a "medical opinion," as defined under 20 C.F.R. § 404.1513(a)(2)(ii), such that, under the revised regulations that apply to claims filed on or after March 27, 2017, an ALJ is obligated to "articulate," at minimum, her consideration of the factors of supportability and consistency under 20 C.F.R. § 404.1520c(b)(2) with respect thereto.  For instance, in Christopher M. V. v. Comm'r of Soc. Sec., No. 1:19-CV-01500 (JJM), 2021 WL 804258 (W.D.N.Y. Mar. 3, 2021), as in the present matter, the plaintiff contended that the ALJ erred by failing to

evaluate a report authored by a VA psychologist that related to a VA compensation and pension examination.  See Christopher M. V., 2021 WL 804258, at *2.  There, the court observed that the VA psychologist's report was "based on his examination of the plaintiff in addition to his review of the plaintiff's VA records."  Id.  Further, the court noted that the VA psychologist "identified the plaintiff's primary mental health diagnoses of PTSD and Major Depressive Disorder," and "opined that, with regard to all plaintiff's mental diagnoses, plaintiff suffered from a "total occupational and social impairment."  Id. (internal quotation marks and citation omitted).  The court further noted that the VA psychologist opined that the plaintiff's "PTSD caused a major impairment in social and occupational functioning as well as in judgment and mood and [that the] plaintiff's MDD caused a serious impairment in social and occupational functioning."  Id.  The VA psychologist's report identified the clinical findings and criteria set forth in the Diagnostic and Statistical Manual of Mental Disorders, 5th edition (the "DSM-5") that he used to make his PTSD diagnosis, and checked off boxes for the following "symptoms that actively appl[ied] to the [plaintiff's] diagnosis:" "depressed mood"; "anxiety"; "mild memory loss, such as forgetting names, directions or recent events"; "impairment of short- and long-term memory, for example, retention of only highly learned material, while forgetting to complete tasks"; "disturbances of motivation and mood"; "difficulty establishing and maintaining effective work and social relationships"; and "difficulty in adapting to stressful circumstances, including work or a work[]like setting"; among others.  Id.  The court also noted that the VA psychologist opined that, based on the foregoing symptomology, the plaintiff "would be unable to secure and maintain substantially gainful employment . . . due to persistent PTSD symptoms."  Id.

The court in <u>Christopher M. V.</u> expressly rejected the Commissioner's argument—which is identical to the Commissioner's argument here—that the ALJ "was not required to acknowledge [the VA psychologist's] report because it contain[ed] no useful statement about what [the p]laintiff [could] still do despite his impairments[.]" <u>Christopher M. V.</u>, 2021 WL 804258, at *3.  To the contrary, the court concluded, "[a]lthough [the] ALJ . . . was not required to credit [the VA psychologist's] statement that the plaintiff [wa]s unable to . . . maintain substantially gainful employment, . . . [s]he was not free to simply ignore [the VA psychologist's] assessment in its entirety."  <u>Id.</u> (internal quotation marks and citations omitted).  The court reasoned that the VA psychologist's "assessment relate[d] to two of the same conditions that [the] ALJ . . . determined were severe impairments: PTSD and MDD," and observed that the VA psychologist concluded that the plaintiff's PTSD had "worsened since the last exam." <u>Id.</u>  The court also pointed out that the VA psychologist's report "contain[ed] several statements that assess[ed] [the] plaintiff's functional abilities related to work[,]" such as that the plaintiff's "persistent PTSD symptoms[] include[d] increased arousal marked by irritability and difficulty concentrating," "avoidance of stimuli associated with his traumatic experiences marked by avoiding conversations, interpersonal interactions, crowds, and a numbing of general responsiveness marked by being detached and having a restricted range of affect."  <u>Id.</u> (internal quotation marks and citations omitted).  The court also noted that the VA psychologist's report "refer[ed] to th[ose] PTSD symptoms as functional limitations which would impact [the plaintiff's] ability to engage in professional and effective interpersonal interactions, undermine the quality of his productivity, and affect attendance."  <u>Id.</u> (internal quotation marks and citations omitted).

Thus, the court held, because "the ALJ's consideration of [the VA psychologist's] assessment may impact her conclusion at step 3 of her analysis concerning whether the plaintiff's impairments meet the criteria of listing 12.15[,]" the ALJ's failure to discuss or acknowledge the VA psychologist's functional assessment was legal error that required the matter to be remanded.  See id. at *4.

Similarly, in Charles F. v. Comm'r of Soc. Sec., No. 19-CV-1664 (LJV), 2021 WL 963585 (W.D.N.Y. Mar. 15, 2021), the court also concluded that the ALJ committed reversable error by failing to weigh and assess a VA physician's assistant's ("PA") report relating to two VA compensation and pension examinations.  See Charles F., 2021 WL 963585 at *2.  In Charles F., the court explicitly considered the different portions of the VA PA's compensation and pension report, and explained that, although the ALJ correctly noted that he was not required "to weigh or discuss the VA's ultimate [disability] decision," other portions of the VA report "were not disability determinations," but rather, "medical opinions" that "explained how [the plaintiff's] impairments affected his ability to work."  Id.  Further, the Court stated, that because the VA PA's analyses contained "the 'supporting evidence underlying' the VA's ultimate disability decision, they were precisely the sort of evidence that the ALJ was obligated to consider under section 404.1504."  Id. (quoting 20 C.F.R. § 404.1504)).  "Indeed," the court held, "the ALJ not only was required to consider [the] PA['s] medical opinions, [the ALJ] was also required to 'articulate' in his decision how persuasive he found them—explicitly explain[ing] how [he] considered [at least] the supportability and consistency factors."  Id. (quoting 20 C.F.R. § 404.1520c(b)(2)).  The court reasoned that the ALJ's failure to adequately assess the PA's opinions was significant legal error requiring remand

because "[s]everal of [the VA] PA['s] findings call[ed] into question [the plaintiff's] ability to perform . . . work as the RFC contemplated."  Id. at *3.

Here, Dr. Thompson's June 16, 2017 report titled, "Review of Post Traumatic Stress Disorder (PTSD) Disability Benefits Questionnaire," is based on his evaluation of plaintiff, as well as his review of plaintiff's VA records, in connection with a VA compensation and pension examination.  See T. 238-45.  Dr. Thompson diagnoses plaintiff with three mental disorders: (1) PTSD, "chronic and currently severe"; (2) Methamphetamine use disorder, comorbid with him secondary to PTSD, currently in remission"; and (3) alcohol use disorder, comorbid with him secondary to PTSD, currently in remission."  Id. at 238-39.  Dr. Thompson opined that plaintiff's "history of both methamphetamine and alcohol abuse had been ongoing attempts to self[-]medicate his PTSD symptoms[,]" and had "been in remission since 2015."  Id. at 239.  Therefore, Dr. Thompson opined, "the entirety of what [he] assessed to be ongoing and moderate functional disruption is the result of [plaintiff's] PTSD symptoms."  Id.

Dr. Thompson identified the criteria outlined in the DSM-5 that he used to make his PTSD diagnosis.  See T. at 241.  Of particular relevance, Dr. Thompson's assessed "Criterion B" for a diagnosis of PTSD, and found that that plaintiff suffered from the presence of several "intrusion symptoms," including "[r]ecurrent, involuntary, and intrusive distressing memories of the traumatic event(s)"; "[d]issociative reactions (e.g. flashbacks) in which the individual feels or acts as if the traumatic event(s) were recurring.  (Such reactions may occur on a continuum, with the most extreme expression being a complete loss of awareness of present surroundings)"; "[i]ntense or prolonged psychological distress at exposure to internal or external cues that symbolize

13

or resemble an aspect of the traumatic event(s)"; "[m]arked physiological reactions to internal or external cues that symbolize or resemble an aspect of the traumatic event(s)." Id. at 242.  He also discussed the DMS-5 "Criterion D" for a diagnosis of PTSD, which consists of determining whether plaintiff experienced "Negative alterations in cognitions and mood associated with the traumatic event(s), beginning or worsening after the traumatic event(s) occurred, as evidenced by two (or more) of the following:" T. 242.  Dr. Thompson checked boxes to indicate that plaintiff experienced "[p]ersistent and exaggerated negative beliefs or expectations about oneself, others, or the world (e.g., "I am bad[,"] "No one can be trusted,["] "The world is completely dangerous,["] "My whole nervous system is permanently ruined"); "[p]ersistent negative emotional state (e.g., fear, horror, anger, guilt, or shame)"; "[m]arkedly diminished interest or participation in significant activities"; "[f]eelings of detachment or estrangement from others"; "[p]ersistent inability to experience positive emotions (e.g., inability to experience happiness, satisfaction, or loving feelings.)." Id.  Moreover, Dr. Thompson checked boxes concerning "Criterion E: Marked alterations in arousal and reactivity associated with the traumatic event(s), beginning or worsening after the traumatic event(s) occurred, as evidenced by two (or more) of the following:" "[i]rritable behavior and angry outbursts (with little or no provocation) typically expressed as verbal or physical aggression toward people or objects"; "[h]ypervigilance"; "[e]xaggerated startle response"; "[p]roblems with concentration"; "[s]leep disturbance[.]" Id. at 243.  Based on the foregoing, Dr. Thompson opined that plaintiff's "PTSD symptoms . . . cause clinically significant distress or impairment in social, occupational, or other important areas of functioning." Id.  "For VA rating purposes," Dr. Thompson listed the following

14

"symptoms that actively apply to [plaintiff's] diagnoses:" "[d]epressed mood"; "[a]nxiety";

"[s]uspicion"; '[p]anic attacks that occur weekly or less often"; "[c]hronic sleep

impairment"; "[m]ild memory loss, such as forgetting names, directions or recent

events"; "[d]isturbances of motivation and mood"; "[d]ifficulty establishing and

maintaining effective work and social relationships"; "[d]ifficulty adapting to stressful

circumstances, including work or a worklike setting"; "[i]mpaired impulse control, such

as unprovoked irritability with periods of violence." Id.

Dr. Thompson made the following behavioral observation of plaintiff based on the

June 16, 2017 exam:

> This veteran is a well-nourished white male of above-
> average height to looks [sic] his stated age.  His attire was
> casual, neat and appropriate.  His hygiene and grooming
> were good.  He was cooperative to the exam.  He made
> good eye contact.  The veteran sensorium presented as
> intact.  The veteran's speech was relevant, coherent and
> productive.  His thought process was rational and goal-
> directed. There was no evidence of a thought disorder.
> There was no evidence of hallucinations or delusions.
> During the exam the veteran was oriented A3.  During the
> exam the veteran's mood was anxious and distressed.  His
> affect was constricted.  His presentation was consistent with
> his current mental health issues.

Id. at 243-44.  Dr. Thompson then provided the following "[r]emarks," including that,

"[w]hen compared to when I lasted examined this veteran for compensation and

pension purposes in October[] 2015[,] there is evidence of a significant increase in

overall severity of his PTSD symptoms.  I last examined him there were moderate [sic].

They are now fully severe."  Id. at 244.  Dr. Thompson also stated that plaintiff "is

experiencing persistent and severe impairments and [sic], essentially[] all areas of his

psychological functioning[,]" and that "[h]e has marked difficulty maintaining any comfort

level in a crowd her [sic] social gathering."  Id.  Dr. Thompson opined that

> The current severity of [plaintiff's] PTSD symptoms does, in
> my opinion, result in essentially severe limitations in his
> occupational functioning.  [Plaintiff] would have marked
> difficulty maintaining appropriate behavioral or emotional
> stability and most typical competitive work settings.  Also[,] in
> most typical work setting []he would have significant
> persistent difficulty focusing on and carrying out work related
> activities and a reliable and consistent manner.

Id. at 245.  Thus, Dr. Thompson opined, "[a]t the present time, given the current severity

of his symptoms, the only type of work [plaintiff] might be able to do would be relatively

low stress work that he could do essentially entirely by himself."  Id.

The ALJ, in reaching her step three determination, explicitly relied on plaintiff's

hearing testimony; the consultative examination findings of Dr. Shapiro; and the opinion

of the non-examining agency psychologist Dr. Brown, in determining that plaintiff

suffered no more than "moderate" limitations in his ability to (1) understand, remember,

or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace;

and (4) adapt or manage oneself (collectively, the "Paragraph B criteria") in applying the

special technique under 20 C.F.R. § 404.1520a(c)(3).  See T. at 12-13.  As plaintiff

posits, the ALJ did not discuss Dr. Thompson's VA compensation and pension

questionnaire in rendering her step three determination.  See id.; see Dkt. No. 10 at 14.

As the Commissioner correctly points out, however, the ALJ's failure to discuss Dr.

Thompson's opinion at step three, alone, is of no moment.  See Dkt. No. 11 at 7; SSR

17-2, 2017 WL 3928306, at *3 (S.S.A. Mar. 27, 2017) (An [ALJ]'s articulation of the

reason(s) why the individual is or is not disabled at a later step in the sequential

evaluation process will provide rationale that is sufficient for a subsequent reviewer or

16

court to determine the basis for the finding about medical equivalence at step 3).

Nevertheless, as plaintiff avers, at no point thereafter in her decision did the ALJ

evaluate Dr. Thompson's opinion.  See T. at 14-18.  Although the ALJ cited Dr.

Thompson's behavioral observation in assessing plaintiff's RFC, which she referred to

as a "mental status exam[]," T. at 16, the ALJ's decision omits any acknowledgement or

articulation of the supportability or consistency of the opinions contained in Dr. VA

compensation and pension report.  See id.  As discussed below, the Court concludes

that the omission of any articulated reasoning concerning Dr. Thompson's opinions

constitutes reversable error, as the ALJ failed to properly assess—as required pursuant

to 20 C.F.R. 404.1520c—the opinions and underlying evidence of occupational

limitations resulting from plaintiff's PTSD that Dr. Thompson discussed and upon which

he based his ultimate determination of disability.  See id.

Similar to the VA psychologist's opinions in Christopher M.V., Dr. Thompson's

June 16, 2017 evaluation contains opinions relevant to one of the conditions that the

ALJ determined to be a severe mental impairment—PTSD—which Dr. Thompson

opined, based on his review of plaintiff's VA records and examination, had increased in

severity since plaintiff's last exam in October 2015.  See Christopher M. V., 2021 WL

804258, at *3; T. at 244.  Further, as in Christopher M. V., Dr. Thompson's evaluation

"contain[ed] several statements that assess[ed] plaintiff's functional abilities related to

work[,]" such as that plaintiff's PTSD symptoms would cause "[d]ifficulty establishing

and maintaining effective work and social relationships"; "[d]ifficulty adapting to stressful

circumstances, including work or a worklike setting"; "[i]mpaired impulse control, such

as unprovoked irritability with periods of violence," "[i]rritable behavior and angry

outbursts (with little or no provocation) typically expressed as verbal or physical aggression toward people or objects"; "[h]ypervigilance"; "[e]xaggerated startle response"; "[p]roblems with concentration."  T. at 243; see Christopher M. V., 2021 WL 804258, at *3.  Based on plaintiff's PTSD symptoms, Dr. Thompson opined that plaintiff would experience "severe limitations in his occupational functioning[,]" including that "[plaintiff] would have marked difficulty maintaining appropriate behavioral or emotional stability and [sic] most typical competitive work settings";  and, "in most typical work setting[s, h]e would have significant persistent difficulty focusing on and carrying out work related activities and [sic] a reliable and consistent manner."  Id. at 245.  Thus, the Court concludes that Dr. Thompson's foregoing assessment is properly considered "medical opinion" as defined under 20 C.F.R. 404.1504.  See Charles F., 2021 WL 963585, at *2; Christopher M.V., 2021 WL 804258, at *4.  Indeed, Dr. Thompson set forth the "supporting evidence underlying" his ultimate disability decision, including his assessment of plaintiff's limitations in occupational functioning resulting from his PTSD diagnosis.  See T. at 245.  Therefore, although the ALJ was not required to credit Dr. Thompson's ultimate conclusions as to plaintiff's disability, she was obligated to consider Dr. Thompson's opinion and "required to 'articulate' in [her] decision how persuasive [s]he found [it]—explicitly 'explain[ing] how [she] considered [at least] the supportability and consistency factors."  Charles F., 2021 WL 963585, at *2 (quoting 20 C.F.R. § 404.1520c(b)(2)); see Christopher M.V., 2021 WL 804258, at *4.

Furthermore, the Court concludes that the ALJ's omission of any articulated evaluation Dr. Thompson's opinion was not harmless error because, as discussed above, Dr. Thompson's opinions referred to PTSD symptoms that could impact the

ALJ's paragraph B analysis at Step three of the sequential evaluation with respect to plaintiff's ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  See 20 C.F.R. § 404.1520a(c)(3).  For instance, Dr. Thompson's opinions that, as a result of his PTSD symptoms, plaintiff would have "marked difficulty maintaining appropriate behavioral or emotional stability and most typical competitive work settings" and "significant persistent difficulty focusing on and carrying out work related activities and a reliable and consistent manner" "in most typical work settings" present greater limitations than the "moderate" limitations found by the ALJ at Step three with respect to plaintiff's ability to adapt or manage himself and concentrate, persist, or maintain pace.  T. at 13, 245; See Christopher M. V., 2021 WL 804258, at *6. Similarly, Dr. Thompson's opinions call into question portions of the ALJ's RFC determination, particularly with respect to plaintiff's ability to "meet production requirements that allow him to sustain a flexible and goal-oriented pace," T. at 14, as Dr. Thompson noted that plaintiff's PTSD symptoms would cause "significant persistent difficulty focusing on carrying out work related activities and a reliable and consistent manner."  Id. at 245; see Charles F., 2021 WL 963585, at *3 ("[W]hen an omitted medical opinion contradicts the ALJ's RFC determination, the ALJ's failure to evaluate that medical opinion is not harmless error." (internal quotation marks, brackets, and citations omitted)).  As a final matter, although the ALJ relied on Dr. Brown's report in reaching her RFC determination, see T. at 16, which cited a portion of Dr. Thompson's VA compensation and pension examination notes, see id. at 69, Dr. Brown's report, like the ALJ's decision, contained no reference to, or analysis of, the portions of Dr. Thompson's supporting evidence underlying his ultimate disability decision; or the

limitations Dr. Thompson discussed in connection with plaintiff's occupational limitations relating to plaintiff's PTSD symptoms. <u>See</u> <u>id.</u> at 69.

In sum, based on the foregoing analysis, the Court concludes that the ALJ committed reversable error by failing to assess and articulate in her decision the opinion of VA psychologist Dr. Thompson. As this omission could impact the ALJ's 'paragraph B' analysis at Step three of the sequential evaluation and/or her RFC determination, the Court further concludes that remand is necessary. On remand, the ALJ must explain how she considered Dr. Thompson's opinion, explicitly addressing, at least, how well supported they are and how consistent they are with the record. <u>See</u> 20 C.F.R. § 404.1520c(b)(2). Because the Court has determined that remand is necessary on that basis alone, the Court declines to reach the parties additional contentions.

### V. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that plaintiff's motion (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED**, that the Commissioner's motion (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that this case be **REVERSED AND REMANDED**, pursuant to Sentence Four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order.

**IT IS SO ORDERED.**

Dated: March 26, 2021
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge